ALBERT GLEN UNDERWOOD, Plaintiff in Error, v.
STATE OF TENNESSEE, Defendant in Error.

465 S.W.2d 884.

Court of Criminal Appeals of Tennessee. Oct. 5, 1970.

Certiorari Denied by Supreme Court March 1, 1971.

E. Michael Ellis, University of Tennessee, College of Law, Knoxville, and Donald B. Roe, Oak Ridge, for plaintiff in error.

David M. Pack, Atty. Gen., Arnold Peebles, Jr., Asst. Atty. Gen., Nashville, Walter E. Fischer, Asst. Dist. Atty. Gen., Clinton, for defendant in error.

## OPINION

WALKER, Presiding Judge.

The defendant below, Albert Glen Underwood, appeals in error from his conviction for incest and sentence to five years' imprisonment.

He first assigns as error the admission into evidence of his confession. He contends that it was taken in violation of his constitutional rights as delineated by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

The office of trial justice and juvenile judge in Anderson County is held by the same official. On a motion to suppress the confession, the evidence out of the presence of the jury showed that on April 16, 1969, a clergyman telephoned the judge and reported that the defendant's 16-year-old daughter had told him that the defendant had been having sexual relations with her for some time.

In response to this information, the judge ordered the chief deputy sheriff to bring the girl in to his office. On interrogating her, he found her quite agitated. She told

him that the defendant had been having illicit sexual relations with her for the past two or three years. The judge sent for a social worker from the county welfare office to interview the girl and to make arrangements for a foster home.

In the meantime the defendant's wife had called to let him know that the chief deputy sheriff had taken their daughter in custody and had her before the juvenile judge. The defendant, who operated a concession stand in the courthouse, went to the judge's outer office and sat down. After the judge heard some cases, he had Jerry Daniels, a county juvenile probation officer and deputy sheriff, call the defendant into an inner office. The door was closed. Present in the office were the judge, Daniels, and John R. Dillon, state juvenile probation officer, and the defendant.

According to the judge's testimony, the following took place:

"A * * * I said, 'Mr. Underwood.' I think I used this expression, 'Now, we're going to have to get all of our marbles on the table. Do you know your,—Your daughter is in the next office.' And he said, 'I know.' And I said, 'I'm going to have to find a temporary shelter or foster home for her. She has said that you have been having sexual relations with her.' Now, that was all that was said. I didn't accuse him of anything. I just told him what his daughter had told me.

Q And then he stood up and came over and put his hands on your desk and then made the statements that you reduced to writing?

A Yes."

Without any warning of his rights, the defendant admitted the crime and made a rather full oral confession, at the end of which the judge told him: "Mr. Underwood, you can go back to your work." To this he replied: "My work's over." After he left, the judge reduced to writing the defendant's statement. The three officials signed it, and the judge gave it to the sheriff. Soon after this, the sheriff asked the judge to issue a warrant for the arrest of the defendant.

The question is whether the procedure in obtaining this confession offends the rules set forth in *Miranda*. It is conceded that no warning of any kind was given the defendant.

The warnings required by Miranda v. Arizona are required when the person being interrogated is "in custody at the station or otherwise deprived of his freedom of action significant in any way." Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311; see also Vandegriff v. State, 219 Tenn. 302, 409 S.W.2d 370.

Behind closed doors and in the presence of two officers, and with his daughter in the next room, the defendant was confronted by the judge with the accusations against him. The judge told him that he was taking her custody away from him. The effect of the statement to the defendant "to get all of our marbles on the table" was to ask him to tell the facts of the accusation. After his confession, the judge told him he could return to his work. Although no formal charges had been filed against him, we think that Underwood had been deprived

of his freedom of action in a significant way and the *Miranda* warnings were required.

The second assignment contends that the daughter was an accomplice and her testimony was not corroborated.

The daughter testified that the defendant had had sexual relations with her about twice a week over a three-year period. The offense charged in the indictment took place in her bed; her mother was asleep on a couch in another room. The girl does not claim any threats from the defendant. Only in response to leading questions did she say she was afraid of her father. All the whippings she ever received from him, she says, were when she needed them.

■ Holding that a prosecuting witness was an accomplice, our Supreme Court, in Scott v. State, 207 Tenn. 151, 338 S.W.2d 581, said:

> "* * * (T)he female in the case before us said she had been regularly having sexual intercourse with defendant *'all through the years'*—*'every week'* for *'the last two years'* (italics ours), and she had never told anyone about this, not even her mother. It seems utterly impossible that such a thing could have happened, unless she acted voluntarily, consented to it, and concealed it. Upon her evidence, we think there is no reasonable doubt that she was an accomplice."

Except for the confession which we think inadmissible, there is no evidence, testimonial or circumstantial, to corroborate the testimony of the daughter. This assignment is likewise sustained. See Scott v. State, supra.

The judgment is reversed, and the case is remanded for a new trial.

OLIVER, J., concurs.